CALVERT FIRE INSURANCE COMPANY *v.* NEWMAN

No. 41595          November 28, 1960          124 So. 2d 686

*John E. Mulhearn,* Natchez, for appellant.

*Johnson & Johnson,* Natchez, for appellee.

Kyle, J.

This case is before us on appeal by the Calvert Fire Insurance Company, defendant in the court below, from a judgment rendered by the County Court of Adams County in favor of Elbert T. Newman, plaintiff, and affirmed by the circuit court of said county, in the sum of $2,159.86, for property damage to the plaintiff's 1957 Plymouth Plaza automobile, which had been damaged as the result of a collision on or about April 11, 1958, said automobile being covered by an insurance policy issued by the appellant insuring the said automobile for a period from February 8, 1957, to February 8, 1960.

The plaintiff alleged in his declaration that the automobile was purchased by him on February 8, 1957, and that the price paid for the automobile, including sales tax and the cost of a radio installed a short time after the purchase of the automobile, was $2,693.75; that the collision which resulted in the damage to the automobile occurred just outside the city limits of the City of Natchez on April 11, 1958, causing said automobile to be wrecked beyond repair. The plaintiff further alleged

that he had complied with all necessary conditions precedent to the right to recover under said policy from the defendant the actual cash value of the automobile at the time of its destruction, plus the towing and storage costs which amounted to $65 less $50 deductible, or a total of $2,174.86. The plaintiff further alleged that the defendant had refused the plaintiff's request to have said loss appraised as provided for in said policy, and that as a result of the willful failure of the defendant to agree to have said loss appraised and the breach of said contract on the part of the said defendant, it had been necessary for the plaintiff to employ an attorney to prosecute his claim. The complainant therefore asked for judgment for the said sum of $2,174.86, and in addition thereto the sum of $500 for attorney's fee and $150 for additional expense in preparation of the case for trial making a total of $2,824.86.

The defendant, in its answer, admitted that the automobile had been damaged in the above mentioned collision, but denied that the collision caused said automobile to be wrecked beyond repair which amounted to a total loss. The defendant denied that it had refused the defendant's request for an appraisal of the damage or loss, and the defendant denied that the plaintiff was entitled to recover the cash value of the automobile at the time of its destruction plus towing and storage cost less $50 or any attorney's fee. By way of affirmative defense, the defendant averred that the plaintiff had failed to inform the defendant of the selection of his appraiser and therefore had abandoned his effort to seek settlement by appraisal and had entered into an agreement with the defendant, by the terms of which the company was permitted to repair the damaged property; and that such repairs had been made by Byars-McPhail Oldsmobile Company of Natchez, and the defendant had paid to Byars-McPhail Oldsmobile Company the sum of $465.59 for said repairs, and an additional sum of $97.78 for additional repairs; and to the plaintiff an additional

sum of $15 for a total release. The plaintiff in a replication to the defendant's answer, alleged that the defendant had wholly failed to have said automobile properly repaired; and that, because of the failure of the defendant to carry out its part of said agreement, the plaintiff considered said agreement breached.

The appellant in its assignment of errors has listed and argued nine points as grounds for reversal of the judgment of the lower court. It is not necessary that we consider each of these points separately in this opinion; and some of the points may be passed over entirely. The judgment must be reversed because of errors in the instructions granted to the plaintiff, and the insufficiency of the evidence to support the award of damages made by the jury. At the outset, as stated by the Court in its opinion in Potomac Insurance Company v. Wilkinson, 213 Miss. 520, 57 So. 2d 158, it is manifest that the jury in this case was not authorized to find that the car suffered a total loss. The testimony is overwhelming in quantity and quality that the car could be repaired and at least a substantial restoration to complete function effected; and it was error for the court to submit the hypothesis of a total loss. ▪▪ ▪ In Potomac Insurance Company v. Wilkinson, supra, the Court held that the measure of loss to an automobile damaged, but not destroyed, by a collision is the difference between its reasonable market value immediately prior to the collision and its reasonable market value after all reasonable and feasible repairs have been made; ▪▪ ▪ and that in an action on an insurance policy covering damage to the automobile, if in spite of the repairs mentioned there yet remains a loss in actual market value estimated as of the collision date, such deficiency is to be added to the cost of repairs less the contract deductible.

The appellee, Elbert T. Newman, was the only witness who testified to establish his claim that the damage to the car represented a total loss. Newman testified that he purchased the automobile on February 8, 1957, for the

sum of $2,562.25, and that he added a radio a short time thereafter at a cost of $88. The collision which resulted in the damage to his car occurred on April 18, 1958. The front end of his car was damaged, all of the right side; the windshield was broken, the front motor support was bent; the frame was bent, and parts of the frame broken loose; the fuel pump was broken off the car; and the floor board was bent inside the car on the right side. The radiator was slightly twisted, and one of the wheels was bent. Newman testified that it would cost about $2150 to replace his automobile with another automobile of like kind and in like condition; and that figure represented the value of his car as of the date of the accident. He arrived at the valuation of $2150 by deducting from the cost price depreciation at the rate of $44.90 per month, for a period of approximately fourteen months. Newman offered no proof to show the value of the automobile immediately after the collision and before the repairs were made or after the repairs were made. He stated that he did not inspect the car after the additional repairs had been made on the car by Earl Smith Motors at Brookhaven, although he could have inspected it if he had wanted to.

The appellant's proof showed that the automobile had been repaired after the accident by Byars-McPhail Oldsmobile Company in Natchez, pursuant to a written agreement signed by Newman on June 19, 1958; and that the appellant had paid to Byars-McPhail the sum of $465.59 for said repairs, and an additional sum of $97.78 to cover the cost of additional repairs made by Earl Smith Motors in Brookhaven, which consisted mainly of a realignment of a bent frame. The appellant's proof also showed that after the first repairs were made by Byars-McPhail, Newman expressed dissatisfaction with the repairs, and complained especially about the front end repairs—something was wrong with the front suspension or frame. Calvert's representative was advised of Newman's complaint and had the car picked up and delivered to Earl

Smith Motors in Brookhaven for the additional repairs. Two qualified mechanics testified that after the repairs had been made and the frame realigned by Earl Smith Motors at Brookhaven, the automobile was in "an A-1 condition". Alfred M. Hudson of Earl Smith Motors testified that, after he had repaired the frame and put in a control arm, he tried the car out and found that it performed well; and that in his opinion the car was in A-1 condition when it was returned to Byars-McPhail. Allen Stansbury, Manager of Barnett Motor Company, of Natchez, a mechanic of twelve years experience, testified that he had inspected the Newman car after it had been returned to Byars-McPhail from Brookhaven and that he had "road tested" the car, and had found it in A-1 condition. He stated that the body and frame alignment was satisfactory, and the car performed satisfactorily.

At the conclusion of the evidence, the Court granted to the plaintiff two instructions as follows:

"The Court instructs the jury for the Plaintiff that in the event you find for the Plaintiff and you find that said automobile is a total loss to the Plaintiff you will assess his damages as follows: The actual cash value of said automobile at the time of loss as may be determined by you less $50 deductible, less $15 credits."

"The Court instructs the Jury for the Plaintiff that if you believe from the preponderance of the evidence that after said collision, the plaintiff's automobile was damaged, and that thereafter the plaintiff and defendant entered into an agreement whereby the defendant agreed to fix the plaintiff's car and the defendant failed or refused to fix said automobile in accordance with said agreement, then you are under a sworn duty to find for the plaintiff."

■ ■ The court erred in granting each of those instructions. In the first instruction the court submitted

to the jury the question whether the damage to the automobile represented a total loss. And there is no evidence in the record to support a finding of the jury that the damage to the car represented a total loss. The evidence offered on behalf of the appellant, which was uncontradicted, showed that the car could be repaired and at least a substantial restoration to complete function effected; and it was error, as we have stated, for the court to submit the hypothesis of a total loss.

The second instruction was erroneous, in that it furnished to the jury no guide for the assessment of damages or the determination of the amount of damages which the plaintiff was entitled to recover, if the jury should find that the defendant had failed to make the repairs in accordance with the agreement; and that error was not cured by any of the other instructions.

The appellant was not entitled to the peremptory instruction requested by its attorney at the conclusion of all of the evidence. Whether, despite the repairs made on the car, there yet remained a loss in actual value estimated as of the collision date, or whether the repairs made pursuant to the agreement referred to in the pleadings were made in accordance with the agreement, were questions which should have been submitted to the jury under proper instructions of the court.

For the errors mentioned above, the circuit court on appeal should have reversed the judgment of the county court and should have remanded the case to its docket for a new trial, as provided in Section 1616, Code of 1942, Recompiled.

For the reasons stated, the judgment appealed from is reversed and the cause remanded to the circuit court for a new trial.

Reversed and remanded.

*McGehee, C.J.,* and *Holmes, Ethridge* and *Gillespie, JJ.,* concur.