United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 18, 2005**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 04-60577

CHARLES BLAKELY; CASSANDRA BURKS; ESSIE DONNELLY; TERRY LOCKHART; RITA MARSHALL; JOETTA SHEARS,

Plaintiffs-Appellants,

versus

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; ET AL,

Defendants,

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

Defendant-Appellee,

JIMMY BLAKELY; LEE HOUSE; ARLENE JONES; THOMAS MCCOY; SCHERRIE PAYNE; JAMES PITTMAN; SAM SHORT; MIKE UZZLE; BOBBIE VAUGHN,

Plaintiffs-Appellants,

versus

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; ET AL,

Defendants,

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

Defendant-Appellee,

KEVIN BUFFINGTON; VERONICA HUDSON CARR; SHEILA HICKS; DELCINA MCGLOTHIN; SLOVAKIA MCGRUDER; R L MINOR; PRICILLA MINOR; DAPHANIE UNDERWOOD; SANDRA WARD,

Plaintiffs-Appellants,

versus

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; ET AL,

                                                   Defendants,

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

                                          Defendant-Appellee.

_____

       Appeal from the United States District Court
         For the Southern District of Mississippi

_____


Before DAVIS, SMITH, and DeMOSS, Circuit Judges.

PER CURIAM:

      Plaintiffs-Appellants Charles Blakely, *et al.*

("Appellants"), appeal the district court's granting of summary

judgment in favor of Defendant-Appellee State Farm Automobile

Insurance Co. ("State Farm") on Appellants' various claims and

the court's denial of Appellants' motion to alter or amend the

judgment.  For the following reasons, we AFFIRM the court's

orders.

                         **BACKGROUND**

      Each of the Appellants was an insured policyholder of State

Farm and suffered a partial loss to his or her vehicle as a

result of an automobile accident.  Under each Appellant's

automobile insurance policy with State Farm (the "policy"),

"loss" was defined in part as:

      [E]ach direct and accidental loss of or damage to:

            1.   *your* car;
            2    its equipment which is common to the use
            of *your car* as a vehicle . . . .

                              2

The policy provided under "Limit of Liability – Comprehensive and Collision Coverages," in relevant part:

The limit of [State Farm's] liability for *loss* to property or any part of it is the lower of:

1.    the actual cash value; or
2.    the cost of repair or replacement.

Under the same Limits of Liability, the policy also expressly defined the "cost of repair or replacement":

The cost of repair or replacement is based upon one of the following:

1.    the cost of repair or replacement agreed upon by *you* and [State Farm];
2.    a competitive bid approved by [State Farm]; or
3.    an estimate written based upon the prevailing competitive price. The prevailing competitive price means prices charged by a majority of the repair market in the area where the *car* is to be repaired as determined by a survey made by [State Farm]. If *you* ask, [State Farm] will identify some facilities that will perform the repairs at the prevailing competitive price. [State Farm] will include in the estimate parts sufficient to restore the vehicle to its pre-loss condition. *You* agree with [State Farm] that such parts may include either parts furnished by the vehicle's manufacturer or parts from other sources including non-original equipment manufacturers.

Any deductible amount is then subtracted.

In addition, the policy contained a subsection titled "Settlement of Loss – Comprehensive and Collision Coverages." The "settlement of loss" provision read, in relevant part:

[State Farm] ha[s] the right to settle a *loss* with *you*

3

or the owner of the property in one of the following ways:

> 1.  pay the agreed upon actual cash value of the property at the time of the *loss* in exchange for the damaged property.  If the owner and [State Farm] cannot agree on the actual cash value, either party may demand an appraisal as described below.  If the owner keeps the damaged property, [State Farm] will deduct its value after the *loss* from [State Farm's] payment.  The damaged property cannot be abandoned to [State Farm];
> 2.  pay to:
>
>> a.  repair the damaged property or part, or
>> b.  replace the damaged property or part.
>
> If the repair or replacement results in betterment, you must pay for the amount of betterment; or
> 3.  return the stolen property and pay for any damage due to the theft.

Appellants all submitted claims to State Farm for repairs and reimbursements for losses suffered.  State Farm adjusted and paid for such repairs and losses.  However, Appellants believed the policy additionally entitled them to payment from State Farm for the diminished value of their automobiles – the difference in the fair market value of their vehicles just prior to the accident and the fair market value of their vehicles post-repair.  Appellants filed suit in Mississippi state court on or about July 1, 2002, against State Farm and two of its agents.  Appellants' claims included breach of contract, breach of the covenant of good faith and fair dealing, conspiracy, bad faith, breach of

4

fiduciary duty, fraud, and punitive damages.

On July 17, 2002, State Farm and the two agent defendants filed their notice of removal.  On July 24, 2003, the parties signed an agreed order dismissing the two agents.  Appellants filed an amended complaint on December 17, 2003.  State Farm moved to dismiss on December 24, 2003.  The district court granted this motion on April 26, 2004.  The district court first determined it need only address Appellants' claims for breach of contract, bad faith, and fraud.[1]  The court found the policy language was unambiguous and did not provide for any recovery by Appellants for the diminished value in their vehicles; there thus could be no breach of contract or bad faith claim.  The court also found Appellants raised no issue of material fact on the fraud claim.  Finally, the court found Appellants' argument that the policy was unconscionable and thus unenforceable lacked merit. Appellants then filed a motion to alter or amend the judgment, which the court denied on June 18, 2004.  Appellants timely appealed.

## DISCUSSION

This Court reviews the grant of summary judgment *de novo*,

---

[1]Appellants had conceded that their other claims could not be supported.  Moreover, as to those claims the court affirmatively addressed and dismissed, Appellants do not brief any argument other than those outlined below.

applying the same standards employed by the district court.[2]

*Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 259-60 (5th Cir. 2003). We review the legal question of the district court's interpretation of an insurance contract *de novo*, *id.* at 260, as well as its determination of state law, *id.* Under Federal Rule of Civil Procedure 56(c), summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party, the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotrex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

In this diversity case, we are bound by the substantive

---

[2]The district court treated the motion to dismiss filed by State Farm as a motion for summary judgment; we do likewise. *See Stewart v. Murphy*, 174 F.3d 530, 532-533 (5th Cir. 1999) (citing FED. R. CIV. P. 12(b) ("If, [on a 12(b)(6) motion to dismiss], matters outside the pleading are presented to and not excluded by the court, the motion *shall* be treated as one for summary judgment and disposed of as provided in Rule 56.) (emphasis added)"); *Baker v. Putnal*, 75 F.3d 190, 197 (5th Cir. 1996) ("[W]here a district court grants a motion styled as a motion to dismiss but bases its ruling on facts developed outside the pleadings, we review the order as an order granting summary judgment"). Neither party claims error in the Rule 12(b)(6) motion's being treated as one for summary judgment.

insurance law from the forum state, Mississippi. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938); *Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 328 (5th Cir. 2001). Mississippi insurance policies are subject to the same rules of construction as other contracts. *Krebs v. Strange*, 419 So. 2d 178, 181 (Miss. 1982). When courts construe a contract, they read the contract as a whole, to give effect to all of its clauses. *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 752 (Miss. 2003) (citing *Brown v. Hartford Ins. Co.*, 606 So. 2d 122, 126 (Miss. 1992)). "Our concern is not nearly so much with what the parties may have intended, but with what they said, since the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy." *Id.* (citation omitted). Policy language that is clear and unambiguous is construed and must be enforced as written; that policy is binding and cannot be modified to create an ambiguity where none exists. *Farmland Mut. Ins. Co. v. Scruggs*, 886 So. 2d 714, 717 (Miss. 2004); *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.*, 797 So. 2d 981, 985-86 (Miss. 2001). Policy terms should be understood "in their plain, ordinary, and popular sense rather than in a philosophical or scientific sense." *Blackledge v. Omega Ins. Co.*, 740 So. 2d 295, 298 (Miss. 1999) (citation omitted).

I.   Whether the district court erred in finding the policy

7

**language unambiguous as not providing for payment to Appellants for diminished value.**

Appellants primarily argue that Mississippi law requires that the term "cost of repair or replacement" necessarily includes the concept of diminished value, so that the district court was erroneous in holding the terms of the policy excluded diminished value recovery. Appellants rely on a series of Mississippi cases – *Potomac Ins. Co. v. Wilkinson*, 57 So. 2d 158 (Miss. 1952); *Motors Ins. Co. v. Smith*, 67 So. 2d 294 (Miss. 1953); *Calvert Fire Ins. Co. v. Newman*, 124 So. 2d 686 (Miss. 1960); and *Scott v. Transport Indem. Co.*, 513 So. 2d 889 (Miss. 1987) – for this proposition.

Appellants stress that in *Wilkinson*, the Mississippi Supreme Court defined "measure of loss to an automobile damaged, but not destroyed, by a collision" as: "the difference between its reasonable market value immediately prior to the collision and its reasonable market value after all reasonable and feasible repairs have been made." 57 So. 2d at 160. "If, despite such repairs, there yet remains a loss in actual market value, estimated as of the collision date, such deficiency is to be added to the cost of the repairs." *Id.* Appellants note the court in *Smith* recognized the *Wilkinson* court's concept of diminished value. 67 So. 2d at 296. Next, Appellants note the court in *Newman* identically stated *Wilkinson*'s definition of the

8

"measure of loss to an automobile damaged, but not destroyed, by a collision." 124 So. 2d at 688. Finally, in *Scott*, Appellants again emphasize the court cited both *Wilkinson* and *Newman* in defining "cost of repairs" as including diminished value. 513 So. 2d at 894.

State Farm responds that the district court properly dismissed Appellants' complaint. State Farm insists that here the plain and unambiguous language of the policy each Appellant purchased from State Farm limited the insurer's liability to the cost of repair or replacement. State Farm argues the policy plainly and unambiguously defined cost of repair or replacement, which definition did not allow for any additional recovery for alleged diminished value above the cost of repair or replacement. State Farm maintains that because Appellants' vehicles were not alleged to be or deemed total losses, the limit of liability under the policy was the cost to repair or replace the damaged components of the vehicle.

State Farm also contends a majority of the state supreme courts to address the claim that "cost of repair or replacement" necessarily includes diminished value have rejected that argument because the most natural reading of the plain and unambiguous policy language limited the insurers' liability to the cost of physical repair or replacement, not including any additional loss in value. *See* ***Given v. Commerce Ins. Co.***, 796 N.E.2d 1275,

1278-79 (Mass. 2003); *Schulmeyer v. State Farm Fire & Cas. Co.*, 579 S.E.2d 132, 133-34 (S.C. 2003); *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 158 (Tex. 2003); *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 735-37 (Fla. 2002); *Hall v. Acadia Ins. Co.*, 801 A.2d 993, 995-96 (Me. 2002); *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 290-91 (Del. 2001). *But see State Farm Mut. Auto. Ins. Co. v. Mabry*, 556 S.E.2d 114, 122 (Ga. 2001). According to State Farm, where there is no dispositive decision from the Mississippi Supreme Court on an issue, this Court should presume that Mississippi would follow the majority rule. *See Reliance Nat'l Ins. Co. v. Estate of Tomlinson*, 171 F.3d 1033, 1036-37 (5th Cir. 1999); *Byrd v. The Mississippi Bar*, 826 So. 2d 1249, 1252 (Miss. 2002).

The district court sided with State Farm. While the court recognized Appellants' contention that particularly in *Scott* and *Wilkinson* the Mississippi Supreme Court recognized that diminution in value may be recoverable in certain circumstances, the court explicitly distinguished those cases because the policies at issue there did not expressly define the term "cost of repair or replacement." Thus, the district court found that the instant policy's language regarding the limitations on "cost of repair or replacement" was unambiguous and did not provide for any recovery for diminished value.

We agree with the district court's finding. While it is

10

true the Mississippi Supreme Court initially recognized the concept of diminished value in *Wilkinson*, there the policy only provided that the insurer "may pay for the loss in money or may repair or replace the automobile or such part thereof . . . or may take all or any part of the automobile at the agreed or appraised value, but there may be no abandonment to the company." 57 So. 2d at 159. The *Wilkinson* policy is thus distinguishable because it did not expressly limit the definition of "repair" or "cost of repair" as the instant State Farm policy did. There is also nothing in either *Smith* or *Newman* that indicates the policies at issue in those cases contained an explicit limiting definition of "repair, "replace," or "cost of repair or replacement." In *Scott*, the policy merely provided that "in the event of a covered loss, [the insurer] at its sole election may pay the lesser of the stated value of the property at the time of loss or the cost of repairing or replacing the property with other property of like kind or quality." 513 So. 2d at 893-94. Again, the *Scott* policy did not expressly limit the "cost of repair or replacement." Thus, these cases concerned the application of diminished value in situations where the policies only included a label similar to "repair, "replace," or "cost of repair or replacement," without expressly limiting such term, and so do not control the instant case. As the Mississippi Supreme Court has stated: "We are concerned not nearly so much with

11

labels as with language."  *Id.* at 893.

Although we agree with State Farm that several state supreme courts have taken the opposite view than that argued by Appellants, most of those cases are of limited, if any, relevance to the instant situation because they also involved policies that did not expressly limit the term "repair," "replace," or "cost of repair or replacement."  Only the policy in *Schulmeyer* expressly defined "cost of repair or replacement" as:

> 1. the cost of repair or replacement agreed upon by you and us;
> 2. a competitive bid approved by us; or
> 3. an estimate written based upon the prevailing competitive price ... [which] means prices charged by a majority of the repair market in the area where the car is to be repaired . . . .

579 S.E.2d at 133.  There, the court specifically noted that distinct unambiguous limitation on the "cost of repair or replacement":

> The State Farm policy *sub judice* does not recognize value as inherent in the concept "repair or replacement."  The policy recognizes the cost of repair or replacement may be determined by a rate agreed between insurer and insured; a competitive bid approved by the insurer; or an estimate based upon the prevailing competitive market price.  The policy, read as a whole, defines repair or replacement as restoring the vehicle to pre-accident mechanical function and condition and not as restoring value.
>
> To read value into the repair clause would arbitrarily read out of the policy the insurer's right to determine whether to repair the vehicle or to pay for its loss.  The language provision in the present case expressly limits coverage to the lesser of the actual value or the cost of repair.  These are alternatives, which do not include an additional obligation to pay for

12

diminished value when the cost of repair is chosen.

*Id.* at 135-36 (internal citation omitted).  The above analysis informs our determination here.

This particular policy did not merely define loss, explain the limit of liability as the lower of cash value or cost of repair or replacement, and describe the three ways that a loss can be settled between the insured and State Farm, but it also explicitly outlined the three bases for such "cost of repair or replacement."  That is, the "cost of repair or replacement" could be based upon either the cost of repair or replacement agreed upon by the insured and State Farm, a competitive bid approved by State Farm, or a written estimate based upon the prevailing price.  There is no mention of additional recovery for any loss in, or diminished, value; nor can any policy text be understood in its "plain, ordinary, and popular sense," *see* **Blackledge**, 740 So. 2d at 298, to mean such diminished value is recoverable.  Thus, based on our plain reading of the distinct, unambiguous policy language here that expressly defined the limited alternatives of the "cost of repair or replacement," and adhering to the traditional contract principle that the policy is to be read as a whole such that each clause is given effect, see **Royer Homes**, 857 So.2d at 752, we conclude this policy did not provide for additional recovery by Appellants of any diminished value on their vehicles.

13

**II. Whether the district court erred in finding that the policy did not violate public policy and was not unconscionable so as to be unenforceable.**

Appellants argue that even if we read the policy as not providing for recovery of diminished value, the policy should be invalidated as against Mississippi public policy because it does not permit recovery for diminished value. Appellants contend that *Wilkinson* and its progeny establish a strong public policy in favor of recovery for diminished value. Appellants alternatively argue that the policy is both procedurally and substantively unconscionable: procedurally, because while the insured cannot receive diminished value, State Farm can be reimbursed should any increase in the vehicle's value result; and substantively, because the policy is an oppressive contract of adhesion.

State Farm responds that Appellants cannot meet their burden to overcome an insurance policy's plain meaning: "[I]n Mississippi, an insurance policy's plain meaning controls unless an affirmative expression of an overriding public policy by the legislature or judiciary allows us to reach a different result." *Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382 n.11 (5th Cir. 1998). State Farm argues Appellants have not pointed to any legislative or judicial pronouncement that insurers must provide for payment of diminished value in all issued automobile policies. In fact, State Farm suggests the

14

only public policy at issue is the one favoring certainty in contracts.  *See* **Smith v. Simon**, 224 So. 2d 565, 566 (Miss. 1969) (describing right to contract and have contracts enforced as a basic and constitutionally guaranteed right).  State Farm insists the "cost of repair or replacement" term is not an unconscionable bargain, such that "no man in his senses and not under a delusion would make on the one hand, and [that] no honest and fair man would accept on the other."  **Entergy Miss., Inc v. Burdette Gin Co.**, 726 So. 2d 1202, 1207 (Miss. 1998) (internal quotation marks and citation omitted).  Finally, State Farm argues that the policies cannot be unconscionable simply because they are standardized and cover certain risks but not others.  State Farm also notes each policy must be submitted to the Mississippi Department of Insurance before public issuance.  MISS. CODE ANN. § 83-2-7 (1999).

We find no pronouncement by Mississippi, either legislative or judicial, requiring that diminished value be a part of all automobile insurance policies.  We thus agree with the district court that Appellants' arguments regarding the policy's being void as against public policy or due to unconscionability lack merit.

## CONCLUSION

Having carefully considered the record, and the parties' respective briefing and arguments, for the reasons set forth

15

above, we AFFIRM the district court's orders.

**AFFIRMED.**