IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 6, 2007

Charles R. Fulbruge III
Clerk

No. 07-30098

ALLEN GLYN SONNIER, Individually and on Behalf of Others Similarly Situated; NOLAN PAUL MARTIN, Individually and on Behalf of Others Similarly Situated

Plaintiffs-Appellants

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE CO

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 06-1439

Before GARWOOD, GARZA, and BENAVIDES, Circuit Judges.

PER CURIAM:

Allen Glyn Sonnier and Nolan Paul Martin ("Appellants") appeal the district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, which dismissal finally disposed of Appellants' individual and purported class action claims. Appellants possessed automobile insurance policies from State Farm Mutual Automobile Insurance Company ("State Farm"). Appellants allege that State Farm breached its contractual obligation under the policies when it refused to pay for inspection and testing of Appellants' seatbelts and seatbelt

locking mechanisms after Appellants were involved in automobile accidents. For the following reasons, we AFFIRM.

## I. BACKGROUND

Martin and Sonnier were involved in automobile accidents in 2001 and 2004, respectively. They took their automobiles to body shops, where an estimate for necessary repairs was provided. It is undisputed that State Farm paid for repairs as set forth in the estimates and in subsequent supplemental estimates. According to Appellants' vehicle manufacturer and an independent trade group–the Inter-Industry Conference on Collision Repairs–an automobile's seatbelts and seatbelt locking mechanisms (collectively, "seatbelts") should be thoroughly inspected after any collision.[1] If a body shop deems such an inspection unnecessary and does not list it on the estimate, then State Farm will not cover the cost of the seatbelt inspection. Although Appellants do not allege that their seatbelts were harmed in any way during or after the collisions, they claim that State Farm was contractually obligated to provide an extensive seatbelts inspection.

The district court orally granted State Farm's Rule 12(b)(6) motion to dismiss, finding that "based on the contractual agreement to repair, if there is no complaint of a failure, there is nothing to repair." Appellants appeal, arguing that the term "cost of repair" necessarily includes the cost of the seatbelts inspection because in order to repair something, one must first inspect to determine what is in need of repair.

## II. STANDARD OF REVIEW

This Court reviews de novo the district court's order on a Rule 12(b)(6) motion to dismiss. In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th

---

[1] This extensive seatbelts inspection includes examination and testing of the seatbelts, examination and testing of the hardware, road testing of the entire system, and checking the system's warning lights.

Cir. 2007). The court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." Id. (internal quotation marks and citations omitted). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, — U.S. —, 127 S. Ct. 1955, 1974 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965.

## III. DISCUSSION

It is undisputed that Louisiana law applies to this case. According to Louisiana law, "[w]ords and phrases used in a policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." Reynolds v. Select Props., Ltd., 634 So. 2d 1180, 1183 (La. 1994) (citations omitted). "[I]f the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied. It is equally well settled, however, that subject to the above rules of interpretation, insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy." Id. (citations omitted). A court interpreting an insurance policy cannot "make a new contract for the parties or disregard the evidence as expressed, or . . . refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties." Id.

The automobile insurance policies at issue obligate State Farm to pay for "direct and accidental loss of or damage to" the automobile or its equipment. State Farm's limit of liability "for loss to property or any part of it is the lower of" the automobile's actual cash value or the cost of repair or replacement. The

cost of repair or replacement is based upon: (1) a price agreed upon by the insured and insurer; (2) a competitive bid approved by State Farm; or (3) "an estimate written based upon the prevailing competitive price." The third option is involved in this case.

The Supreme Court of Louisiana has previously interpreted the term "repairs," finding that it "must be given its generally prevailing meaning and be construed according to its common usage." S. Cent. Bell Tel. Co. v. Barthelemy, 643 So. 2d 1240, 1250 (La. 1994). "Webster's New Collegiate Dictionary defines repair as, to restore by replacing a part or putting together what is torn or broken. The jurisprudence has similarly defined it as, to fix anything that is broken." Id. (citing Intercoastal Pipe Serv. Co. v. Assumption Parish Sales & Use Tax Dep't, 558 So. 2d 1296, 1300 (La. 1990)) (internal quotation marks omitted).

This Court, applying Louisiana law, held that an automobile insurance "policy provision requiring the insurer to pay the cost of repair or replacement limits the insurer's liability to the cost of restoring the vehicle to substantially the same physical condition as before the accident so that it is as fit for operation as it was prior to the occurrence of the damage." Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 725 (5th Cir. 2002) (citing Townsend v. State Farm Mut. Auto. Ins. Co., 793 So. 2d 473, 480 (La. Ct. App. 2001)). In fact, we previously interpreted the State Farm policy language at issue here, finding it "unambiguous." Blakely v. State Farm Mut. Auto. Ins. Co., 406 F.3d 747, 753 (5th Cir. 2005). We stated that "[t]he policy, read as a whole, defines repair or replacement as restoring the vehicle to pre-accident mechanical function and condition." Id.

Applying these principles to the policy language at issue, we find that Appellants fail to establish that State Farm breached its contractual duties. State Farm is obligated to pay for loss or damage to Appellants' vehicles based upon a written estimate. In creating estimates, body shops conduct an

inspection, list the items in need of repair, and determine the amount State Farm owes "based upon the prevailing competitive price." Appellants' argument that an estimate must necessarily include an extensive seatbelts inspection finds no support in the policy language. There is no policy language describing State Farm's duty to conduct or pay for automobile inspections. State Farm's duty is to pay for loss or damage to Appellants' vehicles, measured by the cost of repair. That obligation was fulfilled in this case, and Appellants do not further identify anything broken that needs to be fixed.

Absent a contractual provision or legislative act calling for an extensive seatbelts inspection upon the occurrence of any automobile collision, we will not enlarge the meaning of "cost of repair" beyond its everyday understanding. The fact that Appellants' automobile manufacturers and the Inter-Industry Conference on Collision Repairs recommend such an inspection does not change our analysis. We are solely guided by the policy language before us, which requires State Farm to pay Appellants for loss to property based upon the cost of repair. There is no indication that State Farm failed to honor this contractual obligation. Thus, Appellants' breach of contract claim is without merit.[2]

Since we find that State Farm did not breach its contractual obligations, we necessarily find that State Farm is not liable for bad faith breach of contract. Accordingly, Appellants are not entitled to any penalties or attorney's fees under LA. REV. STAT. ANN. §§ 22:658 or 22:1220. Therefore, the judgment is
AFFIRMED.

---

[2] If there actually were something wrong with the seatbelts, it would be arguable that State Farm would have to pay for the tests necessary to determine just what that was and how to fix it as part of the costs of repairing the seatbelt. However, Appellants have refused to allege that there is in fact anything wrong with the seatbelt (or even that there seemed to be something wrong).